UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL B. BROCKWAY,                    **No. 04-CV-6254(CJS)(VEB)**
                                       **REPORT AND RECOMMENDATION**
                    Petitioner,

        -vs-

JOHN W. BURGE, Superintendent,

                    Respondent.
_____

I.      **Introduction**

        Petitioner Daniel B. Brockway ("Brockway" or "petitioner"), represented by counsel,

David R. Morabito, Esq., has filed a Petition (Docket No. 1); *see also* Supplement to Petition

(Docket No. 3), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the

constitutionality of his state custody as a result of a judgment of conviction entered against him

on June 17, 1996, in New York State County Court (Steuben County), convicting him of one

count of second degree (felony) murder (N.Y. Penal Law § 125.25(3)).

        Respondent filed a pre-answer motion to dismiss (Docket Nos. 8-1 to 8-6) on the basis

that the Petition is untimely under the one-year statute of limitations set forth in 28 U.S.C. §

2244(d)(1). Petitioner's attorney filed a letter response to respondent's motion to dismiss.

(Docket No. 10). Petitioner subsequently moved to amend the Petition to supplement his claim of

actual innocence with allegedly newly discovered evidence. (Docket No. 12).  Respondent has

opposed the motion to amend the Petition. (Docket No. 17).

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1).

Docket No. 11).  For the reasons that follow, I recommend that respondent's motion to dismiss

the Petition (Docket Nos. 8-1 to 8-6) as untimely be granted, and that petitioner's Motion to

Amend the Petition (Docket No. 12) accordingly be dismissed as moot.

## II.     Background

Brockway was convicted, after a jury trial, of one count of second degree (felony) murder

(N.Y. Penal Law § 125.25(3)) in connection with the robbery and fatal stabbing of Luigi

Cantineri ("Cantineri").[1] Brockway was sentenced to an indeterminate term of imprisonment of

25 years to life. On November 13, 1998, the Appellate Division, Fourth Department, of New

York State Supreme Court, unanimously affirmed the conviction, and the New York Court of

Appeals denied leave to appeal on June 22, 1999. *People v. Brockway*, 255 A.D.2d 988 (App.

Div. 4th Dept. 1998), *lv. denied*, 93 N.Y.2d 967 (N.Y. 1999).

Nearly two years later, on February 1, 2001, Brockway,  represented by Attorney

Morabito, filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law

("C.P.L.") § 440.10 based upon the following grounds (1) newly discovered evidence; (2)

ineffective assistance of trial counsel because of counsel's failure to (a) present an alibi defense;

(b) make a proper motion for a change of venue; (c) properly preserve the repugnant-verdict

claim; (d) move to dismiss the indictment based upon the delay in arresting petitioner; (e)

investigate and introduce evidence; and (f) object to improper and prejudicial evidence; (3)

violation of prosecutorial disclosure obligations under *People v. Rosario*, 173 N.E.2d 881 (N.Y.

---

[1]     Brockway originally was indicted, along with two accomplices (David Seymour ("Seymour") and Michael Wheeler ("Wheeler")), on two counts of first degree robbery and one count of felony murder. Seymour's case was severed from those of Brockway and Wheeler, but the trial court ordered multiple juries. Seymour, who was convicted on all counts, died while incarcerated in 2004. Petitioner's Motion to Amend, Affirmation of David Morabito, Esq. ("Morabito Aff."), ¶5 (Docket No. 12). Wheeler was acquitted of all charges following the trial. Brockway was acquitted of both robbery charges but, as noted, convicted of felony murder. *Id.*, ¶7 (Docket No.12). Brockway's motion to set aside the verdicts as repugnant was denied by the trial court.

1961), and *Brady v. Maryland*, 373 U.S. 83 (1963); (4) failure of the trial court to issue proper jury instructions; (5) improper conduct by law enforcement officials; and (6) erroneous denial of the C.P.L. § 330.30 motion to set aside the verdict. In support of the newly discovered evidence claim, petitioner submitted affidavits of several individuals recanting their trial testimony accusing Brockway and instead implicating a man named Charles "Chuck" Riley ("Riley") as Cantineri's killer. Notably, Riley was deceased at the time of the C.P.L. § 440.10 motion. Brockway also submitted the results of a polygraph test administered to him in 2000, purportedly showing that he and co-defendant Seymour were not responsible for the Cantineri homicide. *See* Petitioner's C.P.L. § 440.10 Motion, Respondent's Exhibit D (Docket No. 8). In opposition to the C.P.L. § 440.10 motion, the prosecutor submitted an affidavit from their chief witness, Charles Lawrence ("Lawrence"), as well as a second statement in which Lawrence reaffirmed his trial testimony. *See* Statements of Charles Lawrence ("Lawrence"), Petitioner's Exhibits to the Petition ("Pet'r Ex.") 48 at 216-17.

The Steuben County Court denied the motion on February 26, 2002. *See* Order Denying C.P.L. § 440.10 Motion, Pet'r Ex. 48. The County Court declined to find that the polygraph results were newly discovered evidence since petitioner and Seymour could have submitted to testing prior to trial but failed to do so, and, in any event, such evidence was inadmissible and not reliable. C.P.L. § 440.10 Order, Pet'r Ex. 48 at 215-16. The County Court also rejected the recanting witnesses' affidavits, finding that recantations were inherently unreliable and insufficient, standing alone, to warrant vacatur of a criminal conviction. *Id.* The County Court further found that the prosecution had, prior to trial, disclosed to the defense all potentially exculpatory evidence. In this material was evidence that several other individuals, including

Riley, had been implicated in Cantineri's murder. Indeed, Riley confessed to a number of people that he was at the crime scene, had stabbed Cantineri, and had stolen money from a coffee can hidden in Cantineri's apartment. *Id.* Because the defense had been made aware prior to trial that this information existed, the County Court concluded, the defense, with the exercise of due diligence, could have produced such evidence at trial. *Id.* at 217. Finally, the County Court rejected the remainder of the claims asserted in the C.P.L. § 440.10 motion. *Id.* at 218-19.

Leave to appeal the County Court's denial was sought from the Appellate Division and denied on April 10, 2003. Although this order was not appealable as a matter of New York state law, *see* N.Y. CRIM. PROC. LAW § 450.90(1), petitioner nevertheless sought leave to appeal to the New York Court of Appeals. That court dismissed the application on June 13, 2003. *People v. Brockway*, 100 N.Y.2d 560, 763 N.Y.S.2d 817 (N.Y. 2003).

About a year later, on June 4, 2004, petitioner instituted the present habeas corpus proceeding, through his lawyer, Attorney Morabito. (Docket No. 1). The Petition asserted the following grounds for relief: (1) the state courts erred in failing to grant a hearing on petitioner's claim of newly discovered evidence, namely, the affidavits of a number of individuals to whom Chuck Riley allegedly confessed to murdering Cantineri; (2) petitioner was denied the effective assistance of counsel based on the errors detailed in the C.P.L. § 440.10 motion; (3) the prosecutor committed *Brady* and *Rosario* violations; (4) petitioner was denied a fair trial due to the judge's failure to instruct the jury that the main prosecution witnesses were accomplices as a matter of law; (5) law enforcement officials committed misconduct; and (6) the trial court abused its discretion in denying petitioner's motion for a trial order of dismissal and/or setting aside the jury's verdict based upon insufficient evidence. (Petition, Docket No. 1).

Respondent moved to dismiss the petition on the basis that it was untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). (Respondent's Motion to Dismiss, Docket Nos. 8-1 to 8-6). Respondent asserted that petitioner was not entitled to have the statute of limitations equitably tolled. *Id.*

Brockway's attorney responded by means of a letter to the Court stating that he had commenced "post-conviction relief motions when the newly discovered evidence was discovered," and under respondent's "analysis, no one would ever be able to bring a motion for newly discovered evidence unless said evidence was discovered within one (1) year of the conclusion of the appeal in State court." (Letter of David Morabito, Esq., dated February 15, 2005, Docket No. 10). Attorney Morabito asserted that he was "continuing to investigate this case" and had recently "uncovered an additional witness who can contradict the testimony of the main witness" at Brockway's trial. *Id.* He represented that he would be "preparing a supplement in the very immediate future to address this additional newly discovered witness/evidence." *Id.*

In November 2008, Attorney Morabito sent a letter to the Court enclosing a copy of a compact disc ("CD") which purported to be a recording of a conversation between two individuals, engaged in a drug deal, in which one of them purports to exonerate Brockway of the Cantineri murder and to implicate another man, Riley, as the murderer. Attorney Morabito stated that the CD was newly discovered evidence that Brockway is innocent of the Cantineri murder. The CD was difficult to understand and no transcript was submitted. The Court returned the CD to Attorney Morabito explaining the reasons that it could not accept the submission in the form presented. *See* Letter from Court to Petitioner's Counsel dated January 23, 2009.

On June 5, 2009, Attorney Morabito filed a Motion to Amend the petition pursuant to

Federal Rule of Civil Procedure ("F.R.C.P.") 15 "by incorporating a CD and Transcript of potential witnesses." *See* Petitioner's Notice of Motion (Docket No. 12). The presently pending Motion to Amend (Docket No. 12) includes the following exhibits: a copy of the CD originally submitted in November 2008 (Exhibit A); the letter from this Court to Attorney Morabito dated January 23, 2009 (Exhibit B); a document titled, "Unsigned statement dated 1/10/09 directing inquiries re: enclosed CD to Steve Brockway," petitioner's brother (Exhibit C); the "Transcription of CD" (Exhibit D); and an undated "Certification of Transcript" signed by Leigh Trasco, of Verbatim Court Reporting Service, Inc. (Exhibit E). The Attorney Affirmation submitted in support of the Motion to Amend seems to be nearly identical to the attorney affirmation submitted by Attorney Morabito in support of the 2001 C.P.L. § 440.10 motion. The first eleven (11) paragraphs deal with the factual background of Brockway's state court proceedings. *See* Affirmation of David Morabito, Esq. in Support of Motion to Amend ("Morabito Aff. re: Mtn. to Amend.") (Docket No. 12). In Paragraph 10, Attorney Morabito states that all of the exhibits submitted in support of his "Writ of Habeas Corpus, dated May 10, 2004" "clearly establish[ ] that the defendant-petitioner was [sic] innocence of the criminal convictions [sic] stated herein." Morabito Aff. re: Mtn. to Amend, ¶10 (Docket No. 12).

Paragraphs 11 and 12 of the Attorney Affirmation (Docket No. 12) deal with the Motion to Amend, which seeks permission

> to incorporate a CD and transcript of the CD clearly setting forth that defendant-petitioner is innocent of the criminal convictions [sic] of Murder in the 2nd Degree. As alleged in the original post-conviction relief applications made at the State Court level and in the Writ [sic] of Habeas Corpus, Chris Black and Chuck Riley were the two (2) participants that committed the murder of Luigi Cantineri on the date in question.

The CD and transcript of the CD was [sic] recorded during the last week of September, 2008, at approximately 1:30 p.m. The taped recording occurred during a drug purchase between Joseph Heverly and Chris Black. In said tape[d] conversation, Chris Black details the fact that he was at the murder scene with Chuck Riley when he stabbed the victim to death. There is further conversation about the wrong doing of state officials and acknowledgment that defendant-petitioner Daniel B. Brockway is innocent of the charges.

Morabito Aff. re: Mtn. to Amend, ¶¶11-12 (Docket No. 12). That is the entirety of petitioner's

Motion to Amend (Docket No. 12).

As Attorney Morabito indicates, the transcript purports to be a conversation between

"Joe", an unnamed female, and "Chris." "Joe" and his female companion have gone to "Chris's"

house so that "Joe" can sell "Chris" some cocaine. During the drug deal, "Joe" brings up the

subject of Cantineri's murder:

| | |
|---|---|
| JOE: | You good? Yo, lookit [sic], man, Chris. Remember what me and you were talking about the other night and your brother got all mad? I ran into Charlie Morris [sic][2], man, and he said you stabbed the fucking – I mean don't get pissed off about it. |
| CHRIS: | Charlie's a fucking – |
| JOE: | I know that. |
| CHRIS: | He's the reason Blaze [petitioner] – |
| JOE: | Baby, you hear that right there? |
| FEMALE: | I know. |
| JOE: | What was that? It was [Steuben County District Attorney] Tunney, right? |
| CHRIS: | What happened, me and Chuck when [sic] to Louie's, we already knew Blaze and (inaudible) [sic] were planning to get him. |
| JOE: | Look, man, I want to say something. I don't want you to think I'm the policeman or nothing [sic]. |
| CHRIS: | Me and Chuck [Riley] figured fuck it. We get him first. I swear man, I didn't stab anyone. |

---

[2]       There is a handwritten notation on the transcript, "Charlie Lawrence," with an upwards arrow pointing to the first paragraph quoted here. There is no indication who wrote the notation. Charles Lawrence was a prosecution witness at Brockway's trial. The Court infers that the reference to "Morris" was supposed to be to Lawrence instead.

| | |
|---|---|
| JOE: | Baby, you didn't hear this. |
| CHRIS: | As soon as Louie opened the door, Chuck started stabbing – |
| JOE: | You know what you should do, dude? You really really really really fucking need to talk to Brockway about this. |
| CHRIS: | I can't do it. |
| JOE: | Well, wait a minute, man. Listen to what I'm telling you. Brockway will get you fucking immunity on it. Man, that fucker's got more money than God right now. |
| CHRIS: | I made a deal with – |
| JOE: | Yeah, but fuck Tunney. Tunney's the corrupt one here, man. |
| CHRIS: | I can't get caught even talking about this shit. |
| JOE: | I'm trying to tell you, dude. I'm going to let Brockway know, you know what I mean, because I know Brockway would get you immunity. |
| CHRIS: | They'll never let Blaze go. They know he killed – |
| JOE: | No, they don't know that for sure. They think that he killed fucking Lantleman (phonetic) [sic]. See, that's the thing, man. And I'll tell you what, man, I ain't even going – this is fucking bullshit. |
| CHRIS: | They can't prove it. |
| JOE: | Right, they can't prove it, but the thing is is that – what the fuck, man. |
| CHRIS: | They got him on Louie. |
| JOE: | Look, look it [sic], man, this shit is all crazy. This is how fucking corrupt the system is, you know. I've got to use the bathroom. . . .<br>Ain't nothing against you, Chris, but what the fuck, man. You know the fucking dude didn't do it. You know fucking Chuck's the fucking dude that did it. He's a fucking homo [sic] anyways [sic]. So . . . |

[End of transcript and CD]

Transcription of CD, Ex. C to Petitioner's Motion to Amend (second ellipsis in original) (Docket No. 12). There are no affidavits from the individuals named in the transcript as "Joe", "Chris", and "Female". Attorney Morabito states in his Affirmation supporting the Motion to Amend that "Chris" is someone named Chris Black, and "Joe" is Joseph Heverly. Morabito Aff. re: Mtn. to Amend, ¶11-12 (Docket No. 12).

Respondent opposed the Motion to Amend, arguing that it should be denied "because the

'newly discovered evidence' is untimely." Respondent's Memorandum of Law in Opposition to Motion to Amend ("Resp't Opp. Mem. re: Mtn. to Amend") at 4-6 (Docket No. 17). In addition, respondent argues, petitioner has "failed to exhaust state remedies with respect to the claim" of which the 2008 CD is the basis. *Id.* at 7-8 (citing, *inter alia*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999) (Docket No. 17). Moreover, as respondent points out, "the Supreme Court has not recognized a claim of actual innocence as a section 2254 claim." *Id.* at 8-9 (citing, *inter alia*, *House v. Bell*, 126 S. Ct. 2064, 2086-87 (2006) (declining to resolve the question left open in *Herrera v. Collins*, 506 U.S. 390, 417 (1993), that is, whether a "freestanding" claim of actual innocence is available to a habeas petitioner)) (Docket No. 17). Respondent argues that even if such an actual innocence claim were cognizable on habeas review, Brockway has not demonstrated entitlement to relief. *Id.* at 9-11 (citing *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) (in order to overcome a procedural default based upon the fundamental miscarriage of justice exception, which requires a showing of "actual innocence", a habeas petitioner must present "new reliable evidence" that was not presented at trial, and must show that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" based on that evidence); *House v. Bell*, 126 S. Ct. at 2077 (noting that the *Schlup* "gateway" standard is itself "demanding" and indicating that a "freestanding" habeas claim of actual innocence would require the petitioner to meet an even higher standard, which was described in *Herrera*, 506 U.S. at 417, as "extraordinarily high"); *House*, 126 S. Ct. at 2087 (stating that were a freestanding claim of actual innocence available, it would require "more convincing proof of innocence than *Schlup*")) (Docket No. 17). Finally, respondent contends that the "evidence with which petitioner seeks to amend his petition is not even remotely credible" as

"[t]he information is not in an affidavit, it is not dated, and the parties are not identified[,]" nor is it "clear when the conversation is taking place, where it is taking place, and who is recording the conversation." Resp't Opp. Mem. re: Mtn. to Amend at 11-12 (Docket No. 17).

In response to respondent's opposition to the Motion to Amend, Attorney Morabito submitted an affidavit stating that "Petitioner has exhausted all state remedies and there is no impediment/bar pursuant to the Statute of Limitations." Reply Affidavit of David Morabito, Esq. ("Morabito Reply Aff.") ¶1 (Docket No. 19). However, he has not explained how he has exhausted state remedies with regard to claim based upon the 2008 CD, since, as respondent points out, the last state-court motion he filed was in 2001. Petitioner again states that the "Amended Petition" is based on additional information that was uncovered, with due diligence, that Chuck Riley is either the murderer or involved in the murder. This proposition is not new. However, the information that was uncovered, and has been set forth in the Amended Petition, is new." *Id.*, ¶3 (Docket No. 19). That is the extent of the Affidavit, which does not address respondent's arguments in opposition to the proposed amendment.

## II.     Timeliness of the Original Petition

A petition for a writ of habeas corpus by a person in custody pursuant to a state court judgment is subject to a one-year limitation period. 28 U.S.C. § 2244(d)(1).  This limitation period runs from the latest of four events:

> "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

28 U.S.C. 2244(d)(1)(A)-(D). For most petitioners, the limitation period will begin to run date on which the judgment of conviction became final. 28 U.S.C. § 2244(d)(1)(A). Respondent argues that the date on which the judgment of conviction became final is the start-date that applies to Brockway's case and that the Petition is untimely because Brockway filed his Petition years after the expiration of the statutory limitation period. *See* Respondent's Memorandum of Law in Support of Motion to Dismiss Petition ("Resp't Mem. re: Mtn. to Dismiss") at 7-8 (Docket No. 8-6).

As respondent points out, the Appellate Division affirmed the judgment of conviction on November 13, 1998, and the New York Court of Appeals denied Brockway's application for reconsideration on June 22, 1999. Petitioner's conviction became "final" ninety (90) days later, on September 20, 1999, the date on which his time to seek a writ of *certiorari* from the United States Supreme Court expired. *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.) ("We . . . hold that the AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or–if the prisoner elects not to file a petition for *certiorari*–the time to seek direct review via *certiorari* has expired."), *cert. denied*, 534 U.S. 924 (2001). Petitioner therefore had until September 20, 2000, to file his federal habeas petition in order to be timely under the statute of limitations. The Petition indicates Brockway

signed it on May 11, 2004, but the Petition was not received by the Clerk of the District Court for filing until June 4, 2004. *Pro se* inmates are entitled to application of the "prisoner mailbox rule" which deems litigation papers mailed by a *pro se* prisoner to the clerk of the court as "filed" the moment the papers are turned over to prison authorities for posting to the court through the prison log system. *Houston v. Lack*, 487 U.S. 266, 276 (1988). For a prisoner who is represented by counsel, however, a habeas petition under 28 U.S.C. § 2254 is deemed filed when it is actually received by the Clerk of the District Court. *See United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003) ("For the purposes of the AEDPA statute of limitations, the submission of a counseled § 2255 motion to the custody of the clerk commences the action, regardless of the date the motion is formally filed."); *Shayne v. Jacques*, No. CIVS041492MCE DAD P, 2005 WL 1398488, at *3 (E.D. Cal. June 10, 2005) ("In order to benefit from the mailbox rule when filing a habeas petition, a prisoner must meet two requirements: (1) the prisoner must be proceeding without assistance of counsel, and (2) the prisoner must deliver the petition to prison authorities for forwarding to the court clerk within the limitations period.") (citing *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003)). Here, Brockway was proceeding with the assistance of counsel with regard to the preparation and filing of his habeas Petition, and therefore prisoner mailbox rule is inapplicable. *See, e.g.*, *Shayne*, 2005 WL 1398488, at *3; *Stillman*, 319 F.3d at 1201. Accordingly, Brockway's Petition is deemed filed on the date it was received by the Clerk of the District Court–that is, June 4, 2004.

The limitation period under § 2244(d)(1)(A) commenced on September 20, 1999, as noted above, and terminated on September 20, 2000. Whether the date of filing is deemed to be May 11, 2004, or June 4, 2004, the Petition is still untimely: Brockway's Petition was not filed

until some three years and five or six months after the expiration date of September 20, 2000.

It is true that AEDPA does allow the limitation period to be tolled during the pendency of a properly filed petition for collateral review in state courts pursuant to 28 U.S.C. § 2244(d)(2). *Artuz v. Bennett*, 531 U.S. 4, 8-11 (2000), *affirming Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999); *accord, e.g.*, *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002). Brockway's C.P.L. § 440.10 motion qualified for purposes of 28 U.S.C. § 2244(d)(2). However, it was not filed until February 1, 2001, one year and five months *after* the statutory period expired on September 20, 2000.[3] Although "'proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending," it "does not *reset* the date from which the one-year statute of limitations begins to run.'" *Bethea*, 293 F.3d at 578 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) (emphases added in *Bethea*), *cert. denied*, 531 U.S. 840 (2000)). Therefore, Brockway's C.P.L. § 440.10 motion did not serve to toll the running of the statute because it was filed well after the limitation period had actually run. *See Smith*, 208 F.3d at 17; *Cross v. McGinnis*, No. 05 Civ. 504(PAC), 2006 WL 1788955, at *7 (S.D.N.Y. June 28, 2006) (where petitioner filed his first collateral state action (a C.P.L. § 440.10 motion) long after the AEDPA deadline, and did not file second collateral attack (*coram nobis* petition) until after C.P.L. § 440.10 was denied, district court held that "[c]learly, the statute of limitations for filing a federal habeas corpus petition expired prior to the pendency of [petitioner]'s collateral state

---

[3] The trial judge denied the C.P.L. § 440.10 motion on February 26, 2002, and the Appellate Division denied leave to appeal on April 10, 2003. *See* Resp. Mem. re: Mtn to Dismiss at 5, 6 (Docket No. 8-6). The C.P.L. § 440.10 motion ceased to be "pending" when the Appellate Division denied leave to appeal. "A post-conviction motion is considered to be "pending" for the purposes of AEDPA's toll, from the time the motion is first filed until the time a final decision on the merits is rendered, including the time during which the motion is pending on appeal." *Sorce v. Artuz*, 73 F. Supp.2d 292, 294 (E.D.N.Y. 1999) (citing *Duncan v. Griener*, No. 97 Civ. 8754(JGK), 1999 WL 20890, at *3 (S.D.N.Y. Jan. 19, 1999); *Geraci v. Senkowski*, 23 F. Supp.2d 246, 252 (E.D.N.Y.1998)).

actions. Because the statute of limitations expired, there is nothing left to toll and [petitioner]'s habeas corpus petition is untimely.").

Turning back to the issue of when to commence the statutory period, I note that in Attorney Morabito's letter response on petitioner's behalf in opposition to respondent's arguments concerning timeliness, he stated that he had acted "very diligently" and had commenced "post-conviction relief motions when the newly discovered evidence was discovered." He argued that under respondent's timeliness "analysis, no one would ever be able to bring a motion for newly discovered evidence unless said evidence was discovered within one (1) year of the conclusion of the appeal in State court." Petitioner thus appears to be arguing that he is entitled to have the benefit of the later start-date for the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(D), "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." As discussed further below, I agree with respondent that under the circumstances present here, an enlargement of the limitation period by means of § 2244(d)(1)(D) is unwarranted. *See* Resp't Opp. Mem. re: Mtn. to Amend at 5-6 (Docket No. 17) (quoting *Cobos v. Skinner*, No. 04-CV-0083F, 2004 WL 2191582, at *4 (W.D.N.Y. Sept. 26, 2004) (Skretny, J.) (quoting *Wims v. United States*, 225 F.3d 186 (2d Cir. 2000)).

*Wims*, which involved a federal prisoner's motion to vacate a sentence under 28 U.S.C. § 2255, the Second Circuit explained that the one-year limitations period applicable to motion to vacate sentence under Antiterrorism and Effective Death Penalty Act (AEDPA) begins to run when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence, regardless of whether defendant actually discovers the relevant facts at

a later date. 225 F.3d at 188.[4]  The Second Circuit has instructed that a district court must ask

whether "a duly diligent person in petitioner's circumstances" would have discovered the

evidence. *Id.* "[T]he date on which the limitation clock beg[ins] to tick is a fact-specific issue[.]"

*Id.* at 190; *see also Rivas v. Fischer*, No. 05-1779-pr, 294 Fed. Appx. 677, 679 (2d Cir. Oct. 2,

2008) (unpublished opn.) (directing district court to take into account its observations in

*Poindexter v. Nash*, 333 F.3d 372, 379 (2d Cir. 2003) (equating the "factual predicate" of a claim

with the facts "relevant" to and "underlying" that claim), and *Wims*, 225 F.3d at 190 n. 4

(observing that "[t]he mere fact that . . . it was possible for [the petitioner] to ascertain the

[factual predicate of his claim]" earlier than he did "is not dispositive" because AEDPA "does

not require the maximum feasible diligence, only 'due,' or reasonable, diligence.")).[5]

      Here, in response to respondent's motion to dismiss the petition as untimely, Brockway's

attorney asserted in his February 2005 letter that he had pursued the matter "very diligently" and

had commenced "post-conviction relief motions when the newly discovered evidence was

discovered."  (Docket No. 10). The "newly discovered evidence" to which petitioner's attorney

---

[4]      "Section 2255(4) [the analog of which is 2244(d)(1)(D)] is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final, see § 2255(1), to the later date on which the particular claim accrued. *See Smith*, 208 F.3d at 15 (distinguishing tolling provisions from those that restart the limitations period). It was, therefore, incorrect to ask, for § 2255(4) purposes, whether appellant's entire sixteen-month delay comported with due diligence and to conclude, as the district court did, that because this lengthy a delay was undue, appellant derived no benefit from § 2255(4). In effect, the district court's approach deprived petitioner of the one year during which, under the AEDPA, he was entitled to rest on his claim."

*Wims*, 225 F.3d at 188.

[5]      *See also Wims*, 225 F.3d at 190-91 (holding that the resolution of the questions of whether a duly diligent petitioner would have discovered the information "depends, among other things, . . . on the conditions of [the petitioner's] confinement" and citing *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) for the proposition that the evaluation of due diligence "may not ignore[ ] the reality of the prison system").

was referring encompasses the recanting affidavits filed in support of the February 2001 C.P.L. §

440.10 motion, including those filed by Barbara Darmstadt, with whom Riley[6] had a child;

Vincent C. Ware, a corrections officer who was a friend of Riley's; and Myron Speicher, another

one of Riley's acquaintances. *See* Exhibits 1, 2, & 4 to Petitioner's C.P.L. § 440.10 Motion,

attached as part of State Court Records submitted in connection with Respondent's Motion to

Dismiss Petition (Docket No. 8-2). Darmstadt, Ware, and Speicher, for instance, alleged that

Riley confessed to them that he had stabbed Cantineri. *See id.* (Docket No. 8-2). All of the

affidavits submitted by petitioner in support of the February 2001 C.P.L. § 440.10 motion were

obtained throughout the previous year, i.e., during 2000. The affidavit with the earliest date is

that of Speicher, which was signed on January 9, 2000. *See* Ex. 4 to Petitioner's C.P.L. § 440.10

Motion (Docket No. 8-2). As the C.P.L. § 440.10 court observed, petitioner's trial counsel was

aware, "as early as January 9, 2000[,] that Chuck Riley had confessed to killing Luigi Cantineri."

C.P.L. § 440.10 Order, Pet'r Ex. 48 at 4. In fact, petitioner's trial counsel was well-aware prior to

trial of the facts in support of his claim–that someone else, namely Riley, had committed the

murder because the prosecution had disclosed *Brady*/*Rosario* material indicating that Riley had

confessed to the murder and was considered a suspect by the police. *See* C.P.L. § 440.10 attached

as part of State Court Records submitted in connection with Respondent's Motion to Dismiss

Petition 440.10 Order (Docket Nos. 8-1 to 8-5), Pet'r Ex. 48 at 4; *see also* Tunney Aff. in

Opposition to C.P.L. § 440.10 Motion (Docket No. 8-4). As the C.P.L. § 440.10 court found, the

affidavits submitted by petitioner in support of that application, which are the same one

---

[6]  Riley died in Arkansas on September 5, 1993. *See* Affidavit of John C. Tunney, Esq. District Attorney for Steuben County (attached as part of State Court Records submitted in connection with Respondent's Answer to the Petition) (Docket No. 8). Seymour died on November 1, 2000, while incarcerated. *Id.*

submitted in support of his federal habeas petition, are not newly discovered evidence. Petitioner was on notice of the facts in support of his claim as early as the time of trial, and no later than 2000.

Section 2244(d)(1)(D) asks when the "facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see also Wims*, 225 F.3d at 188 ("The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed [the newly discovered evidence in Wims's case]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence.").

In this case, petitioner actually did discover the facts supporting his claim that Riley murdered Cantineri; as noted above, he was aware of such facts prior to trial. For present purposes, the Court will assume, as the C.P.L. § 440.10 court found, that as of January 9, 2000, petitioner had facts supporting the claim that Chuck Riley had confessed to killing Luigi Cantineri. Under the *Wims* analysis, the next question is, did petitioner file his habeas petition "within one year of the date in which the discovery would have been made in the exercise of due diligence." *Wims*, 225 F.3d at 188. Here, Attorney Morabito did not file the C.P.L. § 440.10 motion with this newly discovered evidence until February 1, 2001. Thus, nearly a year elapsed there between the discovery date (January 9, 2000), and the time petitioner filed the C.P.L. § 440.10 motion based on this information. Although Brockway was entitled to statutory tolling with regard to the period that the C.P.L. § 440.10 motion was pending, he did not file his habeas

petition under one year and six months after that motion ceased to be pending, as discussed above.  Even if I were to use February 1, 2001, as the start date for § 2244(d)(1)'s limitation period, the petition is still untimely, because more than a year elapsed between the denial of the Appellate Division's leave to appeal denial of C.P.L. § 440.10 relief and the filing of the federal habeas petition.

Furthermore, I agree with respondent that equitable tolling is not warranted. *See Smith v. McGinnis*, 208 F.3d at 17 (stating that equitable tolling applies only in "rare and exceptional circumstances") (citing *Turner v. Johnson*, 177 F3d 390, 391-92 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999)).  Even where "exceptional circumstances" are present, a petitioner also must show that there is a causal relationship between the circumstances and the lateness of his filing, a demonstration that a petitioner cannot make if, acting with reasonable diligence, he could have filed the petition on time, notwithstanding the extraordinary circumstances. *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (citing *Smith v. McGinnis*, 208 F.3d at 17). In any event, petitioner does not claim that he is entitled to have the limitation period equitably tolled. This Court finds that even if Brockway could show extraordinary circumstances, which this Court does not believe he is able to do, petitioner  cannot demonstrate that he acted with "reasonable diligence" throughout the time needed to be tolled. After the denial of the C.P.L. § 440.10 motion in 2003, petitioner waited nearly an entire year before he filed his federal habeas petition. There does not appear to any particular reason for his delay in asserting his claims in federal court. In this Court's opinion, such delay without cause does not support a finding of "reasonable diligence."

### III.    The Motion to Amend

In view of my findings and recommendations set forth above on the untimeliness of the Petition, I recommend that petitioner's Motion to Amend be denied as moot. *Accord*, *e.g.*, *Sorce v. Artuz*, 73 F. Supp.2d at 299 ("For the foregoing reasons, Sorce's petition for a writ of habeas corpus is dismissed as time-barred. In view of the court's ruling and consideration of all materials submitted both by Petitioner and his counsel, Sorce's *pro se* motion to amend his petition is denied as moot.").

In addition, I have considered whether the date on which the conversation recorded on the CD submitted in support of the Motion to Amend should serve as the date for purposes of § 2244(d)(1)(D) and calculation of the limitation period. "The 'newly discovered evidence' AEDPA limitations period 'runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'" *Youngblood v. Greiner*, 97 Civ. 3289, 1998 WL 720681, at *4 n. 4 (S.D.N.Y. Oct. 13, 1998) (citing *Flanagan v. Johnson*, No. 97-10912, 1998 WL 556280, at *3 (5th Cir. Sept. 1, 1998); *Brown v. Keane*, No. 97 CIV. 3302, 1998 WL 148334, at *3 (S.D.N.Y. Mar. 30, 1998)). "Section 2244(d)(1)(D), while allowing the statute to run anew upon the discovery of new evidence, 'does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim.'" *Sorce*, 73 F. Supp.2d at 295 (quoting *Lucidore v. New York State Division of Parole*, No. 99 Civ. 2936 AJP, 1999 WL 566362, at *5 (S.D.N.Y. Aug. 3, 1999) (quoting *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)), *aff'd*, 209 F.3d 107 (2d Cir. 2000).

An initial problem here is that petitioner is unable to specify the date on which the conversation was recorded, asserting only that it was made sometime in September 2008.

Perhaps more important is the fact that, as respondent points out, the CD recording of the conversation between "Joe" and "Chris" does nothing more than assert that Chuck Riley murdered Luigi Cantineri, which is the same assertion contained in all of other items of alleged evidence of actual innocence (i.e., the affidavits of the recanting witnesses submitted in connection with petitioner's 2001 C.P.L. § 440.10 motion). Thus, petitioner has been well aware for years of the factual predicate supporting his claim that Riley was the killer, as discussed above in this Report and Recommendation. Stated another way, a person in petitioner's circumstances acting with reasonable diligence would not have first discovered the factual predicate for the claim that Chuck Riley was actually the murderer in "September 2008"; he would have discovered, and did discover, the factual predicate for such a claim years earlier. Moreover, the CD is of extremely dubious provenance and usefulness. It lacks even a pretense of authentication and is even less reliable than the recanting affidavits; neither "Chris" nor "Joe" have submitted affidavits or any other type of sworn documentation verifying their statements made during the recording. In sum, I do not recommend finding that the newly offered CD and transcript have any effect on the statute-of-limitations computation.

## IV.    Conclusion

For the foregoing reasons, I recommend finding that the Petition was filed after the statute of limitations had expired, that equitable tolling is unwarranted, and that the Petition (Docket Nos. 1, 3) should accordingly be dismissed as time-barred. In addition, I recommend that petitioner's Motion to Amend (Docket No. 12) be denied and dismissed as moot. Finally, I do not recommend issuance of a certificate of appealability as petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). ("A certificate of

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

**/s/ Victor E. Bianchini**

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: March 16, 2010
Rochester, New York.

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to

-22-

petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: March 16, 2010
        Rochester, New York